**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GENE KARLSON,<br><br>              Plaintiff,<br><br>         v.<br><br>DEMATIC CORPORATION, et al.,<br><br>              Defendants. | Civil Action No. 16-321 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

    This matter comes before the Court on Defendants Amazon.com Inc., Amazon Fulfillment Services, Inc. (collectively, "Amazon"), and Dematic Corp.'s[1] ("Dematic", collectively with Amazon, "Moving Defendants") motions to dismiss Plaintiff Gene Karlson's ("Plaintiff" or "Mr. Karlson") Complaint. (ECF Nos. 6, 7.) Plaintiff filed a cross-motion to remand (ECF No. 11), and Moving Defendants replied (ECF Nos. 16, 17). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Plaintiff's cross-motion to remand is denied, Dematic's motion to dismiss is granted, and Amazon's motion to dismiss is denied as moot.

---

[1] Improperly pled as Dematic Corporation and Dematic USA.

I. **Background**[2]

This matter arises from an accident that occurred at an Amazon facility located in Avenel, New Jersey ("Avenel Facility"). (*See generally* Compl., ECF No. 1-2.) On December 4, 2013, Ronald Smith ("Mr. Smith"), a temporary warehouse worker, was caught in a conveyor belt and crushed while performing sorting operations at the Avenel Facility. (*Id.* ¶¶ 17-18.) After becoming stuck in the conveyor belt, Smith was compressed, dragged, and fell to the concrete floor below near Plaintiff, who was working as a full-time facility technician at the Avenel Facility when the accident occurred. (*Id.* ¶¶ 16, 19.) Thereafter, Plaintiff attempted to resuscitate Mr. Smith before emergency personnel arrived. (*Id.* ¶ 20.) Mr. Smith later died as a result of his injuries from the accident. (*Id.*) In addition, as a result of his attempt to resuscitate Mr. Smith, Plaintiff was exposed to blood products requiring ongoing medical care and treatment. (*Id.* ¶ 21.) The conveyor belt at the Avenel Facility was "designed, developed, manufactured, assembled, marketed, supplied, distributed, sold, serviced, redesigned, and/or placed in the stream of commerce" by Dematic. (*Id.* ¶ 23.)

Following the accident, Plaintiff filed a four-count Complaint against Dematic and Amazon in the Superior Court of New Jersey, Law Division, Middlesex County. (*See generally* Compl.) Only Count Four, labeled "Discovery Purposes Only-Amazon," is directed at Amazon and states that "Amazon is included in this Complaint for discovery purposes only." (*Id.* ¶ 37.) The remaining three counts of the Complaint, which are directed at Dematic, are for: (1) strict

---

[2] For the purpose of this motion, the Court accepts the facts alleged in the Complaint as true. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (stating that on a Rule 12(b)(6) motion to dismiss, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief").

products liability (Count One); (2) negligence (Count Two); and (3) punitive damages (Count Three). (*Id.* ¶¶ 22-35.) Dematic removed the action to this Court.

## II. Cross-Motion to Remand[3]

### A. Legal Standard

A motion to remand is governed by 28 U.S.C. § 1447(c), which provides that removed cases shall be remanded, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). In this Circuit, removal statutes are strictly construed, and remand is favored when doubt exists as to the propriety of removal. *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985). The general removal statute permits a defendant in a state court action to remove the suit to federal district court if federal subject matter jurisdiction existed when the complaint was initially filed. *See* 28 U.S.C. § 1441(a). The burden of establishing that there is federal subject matter jurisdiction is borne by the removing party. *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). Likewise, when presented with an argument for remand, the removing defendant must shoulder the burden of establishing the validity of removal and the existence of federal jurisdiction. *Id.*

### B. Analysis

In his cross-motion to remand, Plaintiff argues that there is no diversity of citizenship because "[c]ontrary to Dematic's factual presentation, Dematic is indisputably a citizen of the State of New Jersey, as is . . . [P]laintiff." (Pl.'s Opp'n Br. 4, ECF No. 11.) Specifically, Plaintiff disputes that Dematic's principal place of business is in Michigan, as Dematic alleged in the notice of removal (Notice of Removal ¶ 11, ECF No. 1), and instead asserts that its principal place of business is in New Jersey (Pl.'s Opp'n Br. 8). To support this assertion, Plaintiff cites

---

[3] As the motion to remand asserts that the Court lacks subject matter jurisdiction, the Court shall first address whether it has jurisdiction over this action.

3

the fact that Dematic accepted service of the Complaint at its New Jersey offices and that Dematic's website lists its New Jersey office as the location of Dematic's "Eastern Operations." (Pl.'s Opp'n Br. 9.) In its reply, Dematic argues that New Jersey is not its principal place of business because "Dematic's headquarters of day to day corporate activity and management is located in Michigan, not New Jersey." (Dematic Reply Br. 4, ECF No. 16.) Specifically, Dematic asserts that its "officers direct, control[,] and coordinate the corporation's business activities within the United States and make[] all decisions regarding management from Michigan." (*Id.*) The Court agrees with Dematic.

> In *Hertz Corp. v. Friend*, the Supreme Court:
>
>> conclude[d] that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination . . . .

559 U.S. 77, 92-93 (2010). Here, Dematic's website lists its Michigan office as its "North America Headquarters," and provides that its "network of Regional Operations Offices . . . work in concert with [its] Corporate Headquarters." (Certification of Cynthia A. Walters, Ex. B ("Dematic Website"), ECF No. 11-2.) The website does not refer to any other office as Dematic's "headquarters." Moreover, Jeffrey R. Heinz, the Secretary and General Counsel of Dematic, attested that "Dematic's officers, including but not limited to [the] Chief Executive Officer, Chief Financial Officer, Secretary and General Counsel, direct, control[,] and coordinate all of the corporation's business activities within the United States" and "Dematic makes all decisions regarding the management of the corporation" in the office located in Michigan. (Aff. of Jeffrey R. Heinz ¶ 5(b), (e), ECF No. 16-2.) Accordingly, the Court finds that Dematic has

4

demonstrated that its principal place of business is in Michigan and that there is diversity of citizenship in this action. Thus, Plaintiff's cross-motion to remand is denied.

### III. Dematic's Motion to Dismiss

#### A. Legal Standard

On a Rule 12(b)(6) motion to dismiss, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233. While a complaint does not need to contain detailed factual allegations to withstand a Rule 12(b)(6) motion to dismiss, a pleader must "provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also* Fed. R. Civ. P. 8(a)(2). Put another way, the pleader must "set forth sufficient information to outline the elements of his claim[s] or to permit inferences to be drawn that these elements exist." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (2d ed. 1990)). Yet, importantly, in a Rule 12(b)(6) motion to dismiss, "the defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

#### B. Analysis

In Dematic's motion to dismiss, it argues that: (1) Plaintiff has not stated a claim for relief under New Jersey's Product Liability Act ("NJPLA") because he has not alleged that he suffered physical harm from the conveyor belt; (2) even if Plaintiff could allege physical harm, his claim for negligent infliction of emotional distress would still fail because to recover as a bystander, he must show that he had had a marital or intimate familial relationship with Mr.

Smith; and (3) Plaintiff cannot bring common law claims for negligence and strict liability based upon the defective conveyor belt because those claims are subsumed by the NJPLA. (Dematic's Moving Br. 5-12, ECF No. 7-1.)

### 1. NJPLA Claim

In his opposition, Plaintiff argues that he has sufficiently alleged "physical harm" to state a claim for relief under the NJPLA. (Pl.'s Opp'n Br. 16-17.) Specifically, Plaintiff asserts that:

> it is clear from the medical records, [Plaintiff] caries the diagnosis of "post-traumatic stress disorder" along with "erectile disorder" . . . . Moreover, it is clear [Plaintiff] was immediately blood-drenched and had to undergo extensive care for exposure to blood products including a host of injections and monitoring . . . . [Plaintiff] continues to undergo psychiatric treatment for anxiety, depression, impairment of concentration, panic attacks, nausea, insomnia, headaches, jumpiness, irritability[,] and mood swings.

(*Id.*) These allegations are not, however, contained in the Complaint. As it is axiomatic that a plaintiff may not amend his complaint through his opposition to a motion to dismiss, the Court may not consider these allegations in determining whether Plaintiff has stated a claim for relief. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (stating that a complaint may not be amended by briefs in opposition to a motion to dismiss).

In the Complaint, Plaintiff does not allege any specific injuries, rather he summarily states that he "has suffered and will continue to suffer injuries, including severe emotional distress, which . . . require[] medical treatment and result[] in permanent injury" and that "[a]s a result of his participation in the resuscitation of [Mr.] Smith, [he] was caused to be exposed to blood product requiring ongoing medical care and treatment and causing further trauma and severe emotional distress." (Compl. ¶¶ 20-21.) These conclusory allegations of physical harm

are not sufficient to state a claim for relief under the NJPLA.[4] *See Batchelor v. Proctor & Gamble Co.*, No. 14-2424, 2014 WL 3749160, at *3 (D.N.J. July 30, 2014) ("Plaintiffs' assertion that Batchelor suffered 'mental anguish and emotional distress' is a conclusory statement that is insufficient to demonstrate injury under the [NJ]PLA."); *Kury v. Abbott Lab., Inc.*, No. 11-803, 2012 WL 124026, at *6 (D.N.J. Jan. 17, 2012) (finding that "conclusory and vague allegations that [p]laintiff suffered damages, mental anguish and pain and suffering" were insufficient to state a claim for relief under the NJPLA); *see also Sinclair v. Merck & Co., Inc.*, 195 N.J. 51, 64 (2008) (holding that the NJPLA requires a physical injury).

### 2. Strict Liability and Negligence Claims

In addition, because Plaintiff's strict liability and negligence claims arise from the alleged defects in the conveyor belt, these claims are subsumed by the NJPLA. Plaintiff's reliance on *Thomas v. Ford Motor Co.*, 70 F. Supp. 2d 521, 530-31 (D.N.J. 1999), *Universal Underwriters Insurance v. Public Service Electric & Gas Co.*, 103 F. Supp. 2d 744, 746-49 (D.N.J. 2000), and *Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494, 506 (D.N.J. 1999), to argue that the NJPLA "is not applicable to, and does not restrict all of [P]laintiff's claims" is misplaced. (Pl.'s Opp'n Br. 11-12.) As Dematic explained, Plaintiff's reliance on *Thomas*, *Universal*, and *Naporano* is misplaced, because these cases only underscore the proposition that a negligence claim that is based on an allegedly defective product is subsumed by the NJPLA. In *Naporano Iron & Metal Co.*,[5] the court dismissed the plaintiff's negligence claim, which was

---

[4] Having found that Plaintiff's failure to sufficiently allege physical harm is fatal to his NJPLA claim, the Court need not consider Dematic's argument that Plaintiff's failure to allege that he had a marital or intimate familial relationship with Mr. Smith is fatal to his NJPLA claim.

[5] 79 F. Supp. 2d at 506 ("[Plaintiff] did not plead its case in the alternative or articulate a theory of 'ancillary negligent conduct' in its complaint. Rather, it has claimed throughout that the

7

based on a defective product, holding that it was subsumed by the NJPLA, and in *Thomas*[6] and *Universal Underwriters Ins.*,[7] the court permitted negligence claims that were based only on non-defective products. Here, Plaintiff's claims are premised on the allegedly defective conveyor belt. Plaintiff does not assert any other theory of liability related to a non-defective conveyor belt. Therefore, the Court agrees with Dematic that, as alleged, Plaintiff's strict liability and negligence claims are subsumed entirely by the NJPLA and must be dismissed.

### 3. Punitive Damages

Finally, Plaintiff argues that it would be premature to dismiss his claim for punitive damages "before the development of discovery." (Pl.'s Opp'n Br. 20.) Punitive damages are not an independent cause of action. *See Cal. Natural, Inc. v. Nestle Holdings, Inc.*, 631 F. Supp. 465, 474 (D.N.J. 1986) (""[I]n New Jersey there is no independent cause of action for punitive damages.") Rather pursuant to N.J.S.A. 2A:15-5.13(c), "[p]unitive damages may be awarded only if compensatory damages have been awarded . . . ." N.J.S.A. 2A:15-5.13(c). Having found that Plaintiff has failed to state a claim for relief under the NJPLA or common law, the Court dismisses Plaintiff's claim for punitive damages.

---

[c]rane and its component parts were defective. Therefore, [plaintiff's] negligence claim . . . is subsumed entirely by the [NJ]PLA, and must be dismissed.").

[6] 70 F. Supp. 2d at 531 (holding that plaintiff "may be entitled to relief on a claim for negligent installation pled separately from any [NJPLA] claim since it may yet be proved that [defendant] improperly installed otherwise well-functioning and non-defective airbag components).

[7] 103 F. Supp. 2d at 748-49 (holding that claims "not related to a defect in the product . . . but rather to the maintenance and oversight of [defendant's] emergency response service," were covered by the NJPLA).

## IV. Conclusion

For the reasons set forth above, the Court denies Plaintiff's cross-motion to remand, grants Dematic's motion to dismiss, and denies Amazon's motion to dismiss as moot.[8] An order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: August 24th, 2016

---

[8] Plaintiff does not allege an independent cause of action against Amazon, rather he includes Amazon in the Complaint for "Discovery Purposes Only." (Compl., Count Four.) Now having found that Plaintiff failed to state a claim for relief against Dematic, the Court finds that Plaintiff's request for discovery is moot. Accordingly, the Complaint is also dismissed as to Amazon and Amazon's motion to dismiss is moot.

9